UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division)

____FILED ____ENTERED
____LODGED ____RECEIVED

FEB 04 2015

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| **WILIAM M. SCHMALFELDT, SR** | ) | Case No: |
| 6636 WASHINGTON BLVD, #71 | ) | **RDB15CV0315** |
| ELKRIDGE, MD 21075 | ) | |
| *Pro Se Plaintiff* | ) | |
| v. | ) | PLAINTIFF'S ORIGINAL COMPLAINT |
| **ERIC P. JOHNSON** | ) | FOR DAMAGES, JURY DEMAND |
| 240 BOULTON LANE | ) | |
| PARIS, TN 38242 | ) | |
| *Defendant* | ) | |
| **WILLIAM JOHN JOSEPH HOGE III** | ) | |
| 20 RIDGE ROAD | ) | |
| WESTMINSTER, MD 21157 | ) | |
| *Defendant* | ) | |
| **JOHN DOE 1** | ) | |
| (PSEUDONYMOUS BLOGGER USING | ) | |
| PSEUDONYM "PAUL KRENDLER" and | ) | |
| @BRAINSRFOOD ON TWITTER) | ) | |
| *Defendant* | ) | |
| **JOHN DOE 2** | ) | |
| (PSEUDONONYMOUS BLOGGER USING | ) | |
| PSEUDONYM "HOWARD D. EARL" and | ) | |
| @ALUMEMBRYRIDDLE ON TWITTER) | ) | |
| *Defendant* | ) | |

## INTRODUCTION

1. Plaintiff William M. SCHMALFELDT, Sr. ("SCHMALFELDT") hereby brings this complaint to recover damages inflicted by Defendants, defined below, for engaging in tortious conduct, including but not limited to (1) Libel Per Se, (2) False Light Invasion of Privacy, (3) Abuse of Process, (4) Malicious Prosecution, (5) Obstruction of Justice, (6) Unlawful Interference with Business Relationships, (7) Conspiracy and (8) Intentional Infliction of Emotional Distress.

2. Defendants did, individually and severally, engage in conduct to libel SCHMALFELDT by making specious, spurious and untrue allegations about him in their various blog posts and Twitter accounts. As a result, SCHMALFELDT is permanently damaged since a Google search of his name will come back with the defamatory lies told online by Defendants. This qualifies as Libel Per Se as the things these people said about SCHMALFELDT are the sort of false charges that would permanently cast a person in a negative light. These lies were spread willfully, with malice, knowing the effect such lies would have on SCHMALFELDT's reputation as a writer, as an active member in the Parkinson's Disease Fundraising Community, and as a decent human being.

3. Defendants did, individually and severally, encourage their blog readerships to spread these false, hateful lies about SCHMALFELDT in order to increase their readership in the right wing blogging community and increase the revenue they receive in the form of donations.

4. Defendants did, individually and severally, contact agencies and freelance employers of SCHMALFELDT and flooded their inboxes with defamatory lies about SCHMALFELDT to the extent that one organization, The National Parkinson Foundation, which SCHMALFELDT has raised hundreds of dollars for through book and merchandise sales, asked him to remove their name from

2

SCHMALFELDT's promotional material. Defendants contacted editors of online publications to smear and defame SCHMALFELDT as a "deranged cyberstalker" who would bring disrepute to their publications. At least one publication, "The Examiner," discharged SCHMALFELDT as a result of this systemic attack. SCHMALFELDT left "Digital Journal" after their editor asked why he was receiving all this malicious e-mails about what a "bad person" Plaintiff was. Plaintiff resigned to spare him having to further deal with these online trolls. There is no telling how many freelance opportunities Plaintiff applied for that never responded to SCHMALFELDT'S application due to the online destruction of SCHMALFELDT'S reputation by these Defendants. Defendants also, individually and severally, wrote false negative reviews of books available for sale on Amazon, books they did not purchase or read, for the sole purpose of lowering SCHMALFELDT's rating to a "1-star" level.

5. Defendants did, individually and severally, place SCHMALFELDT under a false light by claiming online in their blogs and Twitter posts that he was engaged in creating and selling pornography and "making audio tapes of child rape", a charge that is as ludicrous as it is false. They also cast a false light on SCHMALFELDT by portraying him to the public as a "deranged cyberstalker" and as a villain under any number of other appellations as will be disclosed in the course of trial.

6. Defendants did, individually and severally, engage in a course of conduct designed to cause intentional and extreme emotional distress to SCHMALFELDT, as will be demonstrated at trial.

7. Defendants did, individually and severally, conspire to obstruct justice in Defendant HOGE's two-year long effort to put SCHMALFELDT in jail for crimes he did not commit, through the introduction of forged evidence in court, and by lies told under penalty of perjury on peace order petitions.

8. Defendant HOGE did, with the assistance of other Defendants, engage in conduct designed to prosecute SCHMALFELDT for crimes and civil torts SCHMALFELDT did not commit.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 USC 1331 (federal question), 28 USC 1332 (diversity of citizenship, and 28 USC 1367(a) which covers supplemental jurisdiction over causes of action based on state law, as state law claims arise out of the same nucleus of operative facts which support the federal claims.

10. Venue is proper in the District of Maryland under 28 USC 1391, in that SCHMALFELDT resides in Maryland, the actions of the Defendants took place in Maryland, the injury occurred in Maryland, and a substantial portion of the communications, transactions, events or omissions occurred in Maryland.

## PARTIES

11. Plaintiff SCHMALFELDT is a retired federal employee who left the federal service as a GS-13 writer editor with the National Institutes of Health under early disability retirement due to his advancing Parkinson's disease. He resides in Elkridge, Maryland, and has advanced to Stage IV Parkinson's disease, which has rendered him unable to walk safely without assistance.

12. Defendant HOGE resides at 20 Ridge Road, Westminster, Maryland. He works as a contractor with the Goddard Space Center in Jessup, Maryland. He runs a blog called "Hogewash.com" where a large percentage of his readership leaves defamatory content regarding SCHMALFELDT.

13. Defendant Eric. P. JOHNSON lives at 240 Boulton Lane, Paris, TN. Plaintiff is not aware of any past or present employment details for JOHNSON. He has no blog that Plaintiff is aware of, but he tweets under the name EPWJ

4

at @mayberryville, has left false negative reviews on Amazon.com about books written by SCHMALFELDT that JOHNSON neither purchased nor read, using the handles EPWJ and now "Bluelake." He is a frequent commenter on the blogs of Defendant HOGE and Defendant DOE 1, now using the name "BusPassOffice" using an avatar of SCHMALFELDT's face with middle fingers extended on both hands. He has made several false claims that SCHMALFELDT is being investigated by "agencies" for "producing child porn audio tapes" and that Vanderbilt University Medical Center is "watching and investigating" SCHMALFELDT for identifying himself as a participant in a Clinical Trial in 2007 involving an experimental surgery to see if people in the early stages of Parkinson's disease could survive the procedure of Deep Brain Stimulation and then tolerate the implantation of the hardware for an extended period.

14. Defendant John DOE 1 uses the Twitter handle of @brainsrfood and runs a website called "The Thinking Man's Zombie" that is nearly entirely devoted to false, defamatory fiction mentioning SCHMALFELDT by name. Using the name "Paul Krendler," which was the name of the Ray Liotta character in the movie "Hannibal", DOE 1 has also created what he calls a "super secret meeting place" at a members-only blog where one must prove that they wish to aid in the personal destruction of SCHMALFELDT before they are allowed entry.

15. Defendant John DOE 2 uses the Twitter handle @alumembryriddle, which he has used since @embryriddlealum was banned by Twitter. He purports to live in Arizona, but Plaintiff has been unable to nail down a location for him. He is an inveterate liar who has consistently demanded that SCHMALFELDT take his own life, he refers to SCHMALFELDT's wife alternately as a prostitute or as a victim on SCHMALFELDT's physical abuse. He is a pernicious, vile, obscene, profane individual who seems to take delight in being pernicious, vile, obscene and profane.

16. SCHMALFELDT will seek subpoena powers from the Court to determine the actual identities and residences of John DOE 1 and 2. Plaintiff reserves the right to ask for subpoenas to identify other unknown people revealed during discovery who may have contributed to the acts identified in this complaint.

**STATEMENT OF FACTS**

17. In late 2012, SCHMALFELDT became aware of an effort by a group of right wing bloggers, under the auspices of the late Andrew Breitbart, to attack an ex-con named Brett Kimberlin who offended Breitbart by walking the streets a free man after being released from prison.

18. On his own blog, SCHMALFELDT wrote about the seeming unfairness of these "freedom loving Christians" to deny forgiveness to a released felon who had done his time.

19. This raised the ire of an individual with whom Kimberlin was engaged in legal action, a member of this group of bloggers, who spread the word that SCHMALFELDT had joined a non-existent group called "Team Kimberlin".

20. This caught the attention of Defendant HOGE, a friend of this other individual, who started referring to SCHMALFELDT negatively on his blog in September 2012.

21. When Breitbart died on March 1, 2013, rather than ramping down the harassment, it seemed as if the Breitbart followers saw it as an honorific to their dead leader to ratchet up the attacks. SCHMALFELDT began performing a "Blog Talk Radio program." On one occasion, SCHMALFELDT made a reference to a Los Angeles County Deputy District Attorney. SCHMALFELDT was aware that there was a negative news story about that individual due to be made public on March 15, 2013, so he made the cryptic remark on his program for this individual to "beware the Ides of March."

22. Defendant HOGE took this to be a threat on his own life. He began filing charges against SCHMALFELDT, alleging at first harassment, harassment by computer, and illegal access to a computer. This third charge was based on Defendant HOGE's incredible assertion that SCHMALFELDT had somehow, on the same day Super Storm Sandy was battering the East Coast, commandeered a computer server in Kansas City, used it to take over the IP address of a religious organization in Brazil, and used it to harass HOGE. These charges were subsequently deemed *nolle prosequi* by the Carroll County, Md., State's Attorney.

23. Defendant HOGE then tried twice to obtain a peace order against SCHMALFELDT in the Carroll County District Court. He was denied both times. He appealed to the Circuit Court which granted his Peace Order based on a lie HOGE told about how blocking SCHMALFELDT on Twitter would be the same as disabling a significant portion of his internet functionality, and would be the same as having to change his telephone number to avoid telemarketers. The Circuit Court judge who admitted on the stand that he had no idea what "the Twitter" was for or how to use it, accepted Defendant HOGE's explanation and granted the peace order. Within 30 days, Defendant HOGE attempted to "follow" SCHMALFELDT on Twitter.

24. With his peace order in hand, and having it extended an additional six months by the same judge in December 2013, Defendant HOGE made SCHMALFELDT's life a living hell, filing a total of 367 (three hundred sixty seven) charges against SCHMALFELDT, all of which were ultimately *nolle pross'd* by the Carroll County State's Attorney.

25. Being free to write *about* Defendant HOGE, but not *to* him, SCHMALFELDT wrote an e-book called *"My Slow, Journalistic Death,"* which contained a lengthy portion of an obscene and vile bit of defamation written by Defendant DOE 1. As DOE 1 is an anonymous individual, Plaintiff did not

7

know whom to contact to get permission. DOE 1 contacted HOGE via Twitter and, as a result, HOGE "purchased" the "world book and e-book rights" to the vile blog entry. HOGE contacted the publisher and the book was removed from the shelves.

26. HOGE then filed a shabbily constructed Copyright Infringement case against SCHMALFELDT in this Court which was assigned to her Honor, Judge Ellen L. Hollander as case number 1:14-cv-01683-ELH. When HOGE asked for a preliminary injunction, after a contentious hearing, Judge Hollander ordered the case to a Federal Magistrate Court for settlement. She later issued a 31-page scolding of HOGE as a memorandum opinion denying his preliminary injunction, going as far as she could within the bounds of jurisprudence to inform HOGE that he had no case.

27. While this was going on, the original peace order expired. HOGE wasted no time trying to get a new peace order instituted. However, the District Court of Carroll County denied even a temporary peace order, claiming it had no statutory basis. HOGE appealed, and the hearing date was set for August 27, 2014.

28. At the settlement hearing, HOGE (who had demanded $640,000 along with an admission of wrongdoing, an apology and other remediation) settled for $0, no apology, no admission of wrongdoing. After the hearing, HOGE and SCHMALFELDT sat chatting amicably for about 20 minutes, at the conclusion of which HOGE assured SCHMALFELDT that he need not make the painful, arduous trip from Elkridge to Westminster on the 27th as HOGE did not intend to pursue the peace order. SCHMALFELDT was effusive in his thanks to HOGE for sparing him the trip, which raises severe issues with his Parkinson's disease. Not once in the period between August 14-27, 2014, did HOGE give even a hint that he had changed his mind. Therefore, on the morning of August 27, SCHMALFELDT kept an appointment with his neurologist that was set in May. Without even

1  warning SCHMALFELDT, HOGE attended the hearing and got an uncontested peace
2  order.
3      29.   HOGE then committed what amounted to an end run around the people
4  he called "the middle men", being the Court Commissioner, the State's
5  Attorney and the District Court, and filed a petition to find SCHMALFELDT in
6  contempt of court for violating the peace order. SCHMALFELDT's alleged
7  contempt was posting a link to something HOGE had written on his blog. This
8  caused WordPress to automatically send an e-mail to HOGE, which he deemed
9  direct contact. At the Show Cause hearing on January 30, 2015, HOGE
10 introduced another bit of evidence of SCHMALFELDT's alleged contempt.
11 SCHMALFELDT has a widget on one of his websites, created by a company called
12 ReverbNation, whereby if anyone enters anyone's e-mail, that person will
13 receive an invitation to join SCHMALFELDT's mailing list. Someone had
14 apparently entered HOGE'S e-mail address. He claimed the resulting e-mails
15 counted as direct contact when, for all SCHMALFELDT knows, HOGE could have
16 entered his own e-mail address on the form. At the hearing, HOGE also offered
17 into evidence a letter he claimed SCHMALFELDT wrote to him in violation of
18 the peace order. It was a clear forgery as SCHMALFELDT will demonstrate at
19 trial. The judge took the case under advisement and as of this filing
20 SCHMALFELDT is not aware of what the decision will be. On February 1, 2015,
21 Schmalfeldt posted a Twitter "tweet" directed to the attention of the
22 readership of Hogewash and The Thinking Man's Zombie. He asked the commenters
23 to please respect his right to privacy, his right to publicity, and to cease
24 writing defamatory things about SCHMALFELDT and his family that they did not
25 know, for a fact, to be true. Instead of ceasing, this attempt to talk sense
26 to this group of readers seemed to infuriate them, causing them to pick up
27 the rate, frequency, and general nastiness of their defamatory comments. On
28 the Hogewash blog, Defendant HOGE assured his readers that SCHMALFELDT would

have to prove they were lying to support his claim of libel per se. SCHMALFELDT is well prepared to prove that he is not lying about his service in the military, he is not lying about the extent of his Parkinson's disease, that he is not a "pro=pedophilia activist," that he did not "have sex on stage while in uniform in Japan with a transvestite," along with dozens of other claims made on HOGE and DOE 1's blog about SCHMALFELDT that were presented to their readership as if they were true facts.

**FIRST CLAIM FOR RELIEF**

**LIBEL (PER SE)**

**(All Defendants)**

30. Plaintiff re-alleges and incorporates every paragraph above.

31. Calling a person a "deranged cyberstalker" can only implant a negative impression about that person in the reader's mind.

32. SCHMALFELDT has never been convicted under Maryland CL § 3-805 which describes so-called cyberstalking. Peace Orders are a civil matter, not a criminal conviction or adjudication. Therefore referring to SCHMALFELDT as an "adjudicated cyberstalker" is incorrect and defamatory, and libel per se.

33. SCHMALFELDT has never been diagnosed by competent psychiatric authority – or anyone else – as "deranged." His neurologist recognizes certain changes in his cognitive abilities and executive functioning that are due to his 15-year struggle with Parkinson's disease. But that is a long way from "deranged."

34. Referring to SCHMALFELDT as "deranged" is incorrect and defamatory and thus libel per se.

35. Defendant HOGE tosses his readership some red meat and leaves the defamation up to them feeling protected by Section 230 of the Communications Decency Act. A survey of his blog postings for the final week of January 2015 shows he posted 45 blog posts on Hogewash.com. Those posts generated a total

10

of 803 comments. There were five posts about SCHMALFELDT, about 11 percent of the total output for the week. Out of the 803 comments, 483 (60.1%) were comments attacking SCHMALFELDT on a personal basis. This is his tactic. He knows what his readers want, and he serves it up on big, bloody plates.

36. It's hard to imagine a false charge doing more harm to a person's reputation than the false charge of producing child pornography. Defendant JOHNSON has made that claim time after time, as SCHMALFELDT will demonstrate at trial. The "child rape audio tapes" JOHNSON constantly refers to consist of two comedic bits, available on Sound Cloud. In one, called "Like Sheep to the Ravenous Homosexual Wolf", a fictional preacher exhorts his "audience" to not patronize the boy scouts, and he creates a fictional scenario where a pretend 11-year old and a pretend 8-year old are in a tent. The 11-year old wants to have sex with the 8-year old. The 8-year old refuses. The scoutmaster intervenes and warns the 8-year old that he faces expulsion from the Boy Scouts for not recognizing diversity. The 8-year old acquiesces reluctantly and before anything happens, the scene dissolves back to the preacher warning the listeners about the evil that awaits their children in the Boy Scouts. The second satirical piece involves a pretend Texas Gov. Perry talking about his days as a scout. He talks about how when they all hit the tents at night, they'd do what boys that age do, and that's "play with ourselves." He says that "sometimes, you grab ahold of someone else's pecker just so's you can know what it will feel like when a woman does that to you someday." This pretend Perry describes a scenario in which he and another scout were practicing oral sex on each other "so we'd know how it felt when a woman did it some day" when they noticed another scout sitting there watching. They beat him up, called him homophobic names and kicked him out of the troop. "And that's why I am against allowing the evil of homosexuality to enter the body of that most Christian of institutions, and by that I mean the

Boy Scouts." Once again, no actual sex, no actual children, all voices done by SCHMALFELDT, and Defendant JOHNSON to this day continues to claim that "agencies" are "investigating" these "child audio rape tapes" SCHMALFELDT has for sale. Saying that someone is a child pornographer is the worst kind of libel per se.

38. Defendant DOE 1's entire website is an exercise in libel per se. He doesn't even try to change names, for the most part, referring to SCHMALFELDT and his wife by name in his twisted scenarios. Plaintiff and his wife are not public figures. They each have the right of publicity to control the use of their names. This is clearly libel per se.

38. Defendant DOE 2 has committed some of the more egregious libels against SCHMALFELDT. He has, in Twitter comments and on blogs, referred to SCHMALFELDT's late mother as a prostitute. He alternately refers to SCHMALFELDT's wife as a truck stop whore or as a victim of SCHMALFELDT'S physical abuse. He has concocted pictures of SCHMALFELDT'S late father as a transvestite trading oral sex for drinks. He has sent SCHMALFELDT images via Twitter of graphic simulated suicide, demanding that SCHMALFELDT end his own life. The more SCHMALFELDT demands that he stop, the worse he gets. As these are the sort of things that no one can see without getting a negative impression of a person, this is clearly libel per se.

**SECOND CLAIM FOR RELIEF**

**FALSE LIGHT INVASION OF PRIVACY**

**(All Defendants)**

39. Plaintiff re-alleges and incorporates every paragraph above.

40. Any one of the allegations shown above, as read by a person who did not know the plaintiff, would cause a false impression about the plaintiff. In addition, comments about SCHMALFELDT "faking" his Parkinson's disease, applauding SCHMALFELDT's ex-wife for cheating on him, these amount

12

to intrusions into SCHMALFELDT's private life. SCHMALFELDT remains a private citizen, not a celebrity. Defendants have appropriated SCHMALFELDT's likeness from copyrighted photos to use as they will, distorting the images, cropping them dishonestly, or crafting them into disfigured creatures to portray SCHMALFELDT in a false light as being a stalker, a supporter of pedophilia, and practically any other sort of monster they care to depict. Therefore, according to The Restatement (Second) of Torts, § 652D, the Defendants have given unwanted publicity to private matters concerning SCHMALFELDT's private life and therefore are subject to the liability of invading Plaintiff's privacy.

### THIRD CLAIM FOR RELIEF
### ABUSE OF PROCESS
### (Defendant HOGE)

41. Plaintiff re-alleges and incorporated every paragraph above.

42. HOGE has told multiple lies on his various applications for peace orders and applications for statement of charges. In the period between February 18, 2013 through today, HOGE has filed a total of 367 (three hundred sixty seven) criminal charges against SCHMALFELDT (all of which were *nolle prosequi* by the Carroll County and Howard County State's Attorneys), he has secured two peace orders, and is currently trying to convince a Carroll County Circuit Court judge to find SCHMALFELDT in contempt of court.

43. Every time HOGE has been shot down by legality, he remounts and tries again, with the same results.

44. For all his court cases against SCHMALFELDT, HOGE has only won arguments where he presented false testimony or false or forged evidence.

45. HOGE applied for his copyright infringement lawsuit before even filing a copyright application for the material he was seeking to protect.

13

46. HOGE is aware that a "ping back" is an automatic function of WordPress. The resulting comment would not have appeared on HOGE'S blog if he did not approve it. But rather than use the traditional method of getting the court commissioner to issue a charge, turning the case over to the State's Attorney, HOGE bragged on his blog January 30 about this novel way to avoid these "middle men" to get a contempt case, however ludicrous, in front of a judge.

47. HOGE has abused process at the District Court level by lying on his peace order petitions, at the Circuit Court level by lying during peace order petitions, lying to the plaintiff in the instant case about his need to appear for a hearing that he was assured would not take place, lying to the judge during these hearings, and presenting a forged letter as factual, and he has lied at the US District Court level in his claims of copyright infringement that were not infringement.

**FOURTH CLAIM FOR RELIEF**

**MALICIOUS PROSECUTION**

**(Defendant HOGE)**

48. Plaintiff re-alleges and incorporates every paragraph above.

49. Each time a group of HOGE's charges against SCHMALFELDT was dismissed, he would enter a fresh new set of charges. The definition of insanity is doing the same thing over and over, and expecting different results.

50. Keeping a person in fear of imprisonment when the person knows no crime has been committed is about as malicious as a person can get.

51. HOGE knows that SCHMALFELDT's Parkinson's disease has rendered him physically incapable of walking any distance without assistance. Yet he continued to file case after case after case with the same result every time.

14

14

1  But he achieved his end of causing SCHMALFELDT's Parkinson's disease symptoms
2  to worsen.
3      52. Before the January 30, 2015 "show cause" hearing, after
4  SCHMALFELDT expressed his concerns over the way his body reacts to cold
5  weather and the real fear he would fall and hurt himself, HOGE bragged on his
6  blog about how his deadline to "answer" SCHMALFELDT's motions would ensure
7  that SCHMALFELDT would be forced to venture outside on a very cold and windy
8  day. January day. HOGE'S bloodthirsty readers actually hoped for and cheered
9  for a cold day so SCHMALFELDT could potentially break a hip. Fortunately for
10 SCHMALFELDT, he only fell once and was not injured.
11     53. HOGE does not file these charges with the purpose of seeking
12 justice. He seeks vengeance. The fact that HOGE has failed to land a single
13 charge against SCHMALFELDT proves that the 367 (Three Hundred Sixty Seven)
14 charges were, in fact, malicious in nature.

**FIFTH CLAIM FOR RELIEF**

**OBSTRUCTION OF JUSTICE**

**(All Defendants)**

19     54. Plaintiff re-alleges and incorporates every paragraph above.
20     55. SCHMALFELDT does not know for sure who mailed the forged letter
21 with the forged signature to HOGE. The list of suspects is small and includes
22 HOGE, but anyone with access to a copy of SCHMALFELDT'S signature that HOGE
23 proved he had access to would make him the lead suspect.
24     56. The letter is currently in the custody of the Carroll County
25 Circuit Court. Rudimentary fingerprint testing and DNA testing of the stamp
26 and envelope should determine who sent it.

57. Whoever did send it obviously did so with the aim of assisting HOGE in his very weak contempt case. Therefore, it qualifies as an obstruction of justice.

### SIXTH CLAIM FOR RELIEF

### UNLAWFUL INTERFERENCE WITH BUSINESS RELATIONSHIPS

### (All Defendants)

58. Plaintiff re-alleges and incorporates every paragraph above.

59. Having a couple hundred Google entries pop up calling you a "deranged cyberstalker" is not conducive in the object of attempting to find part-time or freelance work.

60. Each of these Defendants bragged about writing, calling and spamming the headquarters of the National Parkinson Foundation until they asked Plaintiff to remove their logo from his websites.

61. Each of these Defendants bragged about writing to editors who had engaged SCHMALFELDT, sometimes under a pseudonym, to write for them, causing the editor to revoke SCHMALFELDT's writing agreements with them.

62. In particular, Defendant JOHNSON is responsible for posting false, negative reviews of books he never purchased or read, just to hold down Plaintiff's potential book sales on Amazon.

### SEVENTH CLAIM FOR RELIEF

### CONSPIRACY

### (All Defendants)

63. Plaintiff re-alleges and incorporates every paragraph above.

64. The presence of a Members-Only website where only people who wish to participate in the planning of ways to harm or vex SCHMALFELDT, moderated by Defendant Doe 1 is clear evidence of conspiracy.

65. Further evidence of this ongoing conspiracy is the fact that these defendants maintain surveillance on Schmalfeldt's blog and Twitter

account so they can be first to garner "Mr. Hoge's" favor by being the first one to report on whatever activity I have written about. They find nefarious reasons for anything I've done, and even the most innocent action like going to the store with my wife is discussed as if it were a soap opera story. In fact, Plaintiff has compared his situation to that of a real life actor who plays a soap opera villain dealing with an anti-fan club that is apparently unable to tell the difference between the real person and the character he plays on television.

## EIGHTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All Defendants)

66. Plaintiff re-alleges and incorporates every paragraph above.

67. When looking at this complaint in its totality, one is forced to ask, what's the point of all of this? Why do all of this to someone who has caused you no harm and is increasingly physically and mentally unable to cause you harm? The obvious answer is, to exacerbate SCHMALFELDT'S Parkinson's disease symptoms, quicken the pace of his disease-related physical decline and cause his imminent physical incapacity or death at the earliest opportunity. And why? Because SCHMALFELDT supported the right of Brett Kimberlin to walk the Earth a free man. These Defendants are under the mistaken belief that SCHMALFELDT is employed by Kimberlin, thus is Kimberlin's mouthpiece or Public Relations expert. Kimberlin is always referred to as SCHMALFELDT's "most excellent friend" and the fact that SCHMALFELDT has spoken to Kimberlin twice in the past year means nothing because, to a true believer, anything that contradicts the narrative is obviously a lie. SCHMALFELDT claims a friendship relationship with Kimberlin, but SCHMALFELDT is not privy to any "secret knowledge" that Kimberlin's foes believe SCHMALFELDT to possess.

17

68. This 29-month ordeal has taken a physical and mental toll on SCHMALFELDT. People friendly to HOGE et al have mailed horse dung to SCHMALFELDT's home. Shortly before the contempt hearing, commenters on HOGE's blog were bragging about how Plaintiff would look in a jail uniform, and sure enough SCHMALFELDT received a Halloween costume jail uniform in the mail. SCHMALFELDT has received death threats, threats to his wife, threats to his pets, threats to his home, all for the gross and terrible crime of supporting Brett Kimberlin's right to be free and unharassed by right wing morons.

69. SCHMALFELDT believes this whole affair has shaved years off of his already Parkinson's disease shortened lifespan. Nothing can compensate him for that. But SCHMALFELDT feels he can make these people finally stop the harassment and leave him alone with the assistance of this honorable court.

**PUNITIVE DAMAGES**

70. The actions of Defendants both identified and yet-to-be identified demonstrate egregious conduct, unbelievable malice toward a handicapped person, and a sickeningly perverse gratification gained from the harm or potential of harm caused to the Plaintiff. Such action were undertaken with either maliciousness, ill will, vengeance, spite or deliberate intent to harm Plaintiff or, at the very least, a reckless disregard for the profound wrongfulness of their actions and the harm they caused the Plaintiff. Accordingly, SCHMALFELDT requests an award of punitive damages beyond and in excess of those damages necessary to compensate SCHMALFELDT for injuries caused by Defendants' conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief

- Punitive damages as deemed appropriate by the court to punish Defendants' reckless, disturbing and inhuman behavior and to deter further occurrence;

- Compensatory damages and consequential damages in an amount exceeding $75,000;
- An order enjoining the Defendants from engaging in any further harassment or criminal or civil charges against Plaintiff without express permission of a circuit court judge;
- An order requiring all Defendants with blogs to remove every and all reference to SCHMALFELDT'S name, SCHMALFELDT'S likeness either real, drawn or otherwise created, or – in the alternative – the court should determine the proper amount of payment due Plaintiff for each use of his name or likeness without his permission in a non-newsworthy context;
- An order requiring all Defendants to respect Plaintiff's rights under the Restatement (Second) of Torts giving him ultimate control of the use of his name and likeness as a private citizen;
- For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants from retaliating against Plaintiff in any way for bringing this action;
- Costs and fees incurred in the prosecution of this action, and
- Any further relief as this Court may deem just and appropriate.

**JURY DEMAND**

Plaintiff SCHMALFELDT hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully Submitted,

*[signature]*

William M. SCHMALFELDT, Sr. Pro Se

February 2, 2015